FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 18, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FARMERS NEW WORLD LIFE INSURANCE, a Washington corporation,<br><br>               Plaintiff,<br><br>     v.<br><br>BRIDGETTE BURTON, an individual; MARIANNA BURTON, an individual; JACOB BURTON, an individual; ANTHONY BURTON, an individual; GABRIEL BURTON, an individual; CATHERINE BURTON, an individual; JOSEPH BURTON, an individual; MICHAEL BURTON, an individual; MARISSA BURTON, an individual; DANIEL BURTON, an individual; PATRICK BURTON, an individual; MATTHEW BURTON, an individual; ANDREA BURTON SANDBERG, an individual; and JEREMY BURTON, an individual,<br><br>               Defendants. | NO:  2:18-CV-30-RMP<br><br>ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT ~ 1

BEFORE THE COURT are cross motions for summary judgment by several parties in this interpleader action, ECF Nos. 59 & 62. Defendants Michael, Joseph, Catherine, Gabriel, Anthony, Jacob, and Marianna Burton (collectively, "the Burton Children") move the Court for summary judgment. ECF No. 59. Defendant Bridgette Zielke Burton also moves for summary judgment. ECF No. 62. A hearing was held for this matter on January 10, 2019. William F. Etter and Andrew M. Wagley represented Ms. Zielke Burton. Brian Sheldon represented the Burton Children. The Court has considered the parties' arguments, briefing, and the record, and is fully informed.

## BACKGROUND

On October 6, 1979, Wallace and Teresa Burton were married. ECF No. 4 at 1. Together, they raised seven biological children: Michael, Joseph, Catherine, Gabriel, Anthony, Jacob, and Marianna (the Burton Children). ECF No. 47 at 1. Wallace also had six children with his first wife before marrying Teresa: Marissa, Daniel, Patrick, Matthew, Andrea, and Jeremy. *Id.*

On January 12, 1989, Wallace Burton purchased a life insurance policy through Plaintiff Farmers New World Life Insurance. ECF No. 48 at 6. The application for the life insurance policy listed Teresa as the primary beneficiary and his then-living children as the secondary beneficiaries. *Id.* at 9.

On September 9, 2006, Wallace and Teresa Burton divorced in the state of Oregon. ECF No. 4 at 1. The judgment dissolving the marriage awarded full custody of the Burton Children to Teresa. *Id.* at 6. Wallace was ordered to pay child support to Teresa in the amount of $1,291 per month. *Id.* at 8. Additionally, the judgment ordered Wallace to maintain all existing life insurance policies naming the Burton Children, but not his other children, as the primary beneficiaries of the life insurance. *Id.* at 12. The full language of the marriage dissolution judgment regarding the life insurance policy reads as follows:

> 4.3 Husband will maintain all existing insurance policies insuring his life naming Michael, Joseph, Catherine, Gabriel, Anthony, Jacob, and Marianna (or a trustee on their behalf) as the primary beneficiaries
>
> 4.3.1 The obligation to maintain this insurance will continue for all of the children as long as Husband is required to pay child support or any arrearage exists for accrued but unpaid back support on behalf of any of the children as adjudged by the court or an arrearage exists for accrued but unpaid support. This may result in the receipt of insurance death benefits by a child who is not otherwise eligible to receive support. All of the children will benefit from the insurance, not just a child who is eligible to receive support.
>
> 4.3.2 The following provisions relate to procedural aspects of the requirement to maintain insurance:
>
> 4.3.2.1 During the term of the obligation to maintain insurance, Husband will furnish to Wife on request a copy of the policy or evidence that the proper life insurance is in force with the appropriate beneficiary designation in effect.
>
> 4.3.2.2 A constructive trust will be imposed over the proceeds of any insurance owned by Husband at the time of Husband's death if Husband

ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT ~ 3

fails to maintain insurance in that amount, or if the insurance is in force but another beneficiary is designated to receive those funds.

4.3.2.3   Husband is prohibited from borrowing any money from or against or in any way reducing the benefits of the policy.

4.3.2.4   Husband will provide a certified copy of this judgment of dissolution to the appropriate life insurance company in accordance with the provisions of ORS 107.820(6), notify the company of the terms of the judgment of dissolution regarding life insurance, and instruct it to update its records to guarantee compliance.  Husband will require the company to provide Wife 30 days' written notice before canceling the policy or changing the named beneficiary.  Husband will provide Wife proof of compliance with this provision within 60 days of the date of this judgment of dissolution.

*Id.* at 12–13.  The record is unclear as to whether Wallace ever performed the procedures required by the judgment of dissolution regarding the life insurance policy, i.e., naming the Burton Children as the primary beneficiaries of the life insurance; providing a copy of the updated life insurance policy to Teresa; or providing a copy of the dissolution judgment to Farmers.

Wallace married Bridgette Zielke Burton on December 30, 2014.  ECF No. 63-1 at 3.  Despite the judgment ordering Wallace to name his children with Teresa as the primary beneficiaries of the Farmers life insurance, Wallace and Ms. Zielke Burton executed a change of beneficiary form designating her as the sole beneficiary of the life insurance on February 4, 2015.  *Id.* at 12.  At this time, Marianna Burton was still 17 years old and receiving child support.  ECF No. 47 at 2; ECF No. 4 at 8 (ordering that Wallace shall pay child support until a child turns

18 or ceases to qualify as a child attending school). Because contact between Wallace and Teresa or the Burton Children was rare, it is unclear whether this change of beneficiary to Ms. Zielke Burton was ever communicated to Teresa or the Children. ECF No. 61 at 6 (stating that restraining orders were placed on Wallace by Teresa and the children).

Wallace Burton passed away on July 5, 2017, by accidental death. ECF No. 63-1 at 20. On July 13, 2017, Marianna Burton made a claim for benefits of the life insurance policy with Farmers, which totals $100,000. ECF No. 1 at 5, 8. Ms. Zielke Burton also made a claim for the life insurance policy on July 19, 2017. *Id.* Farmers allowed the parties time to attempt to come to an agreement regarding the payment of the life insurance policy. ECF No. 63-1 at 26. With the parties' failure to arrive at an agreement, Farmers filed this interpleader action on January 24, 2018, naming Bridgette Zielke Burton and all of Wallace's children, including those who he had outside of his marriage with Teresa, as Defendants.[1] ECF No. 1. Ms. Zielke Burton and the Burton Children separately moved for summary judgment, each arguing that they are entitled to the full $100,000 benefits of the life insurance policy, plus interest. ECF Nos. 59, 62, 71, & 73.

---

[1] Having failed to answer or respond to the interpleader complaint, Farmers sought and received a Clerk's Order of Default against Wallace's children that he had outside of his marriage with Teresa: Daniel, Jeremy, Marissa, Matthew, Patrick, and Andrea. ECF Nos. 75, 76, & 78.

Farmers filed this action pursuant to the federal interpleader statute, 28 U.S.C. § 1335. ECF No. 1 at 5. Section 1335 states that federal courts have original jurisdiction over interpleader actions as long as the amount in dispute exceeds $500 dollars and two or more adverse claimants are of diverse state citizenship. 28 U.S.C. § 1335(a). Here, Marianna Burton is a resident of California and Ms. Zielke Burton is a resident of Washington, and the amount in dispute is $100,000. ECF No. 1 at 4–5. Therefore, the Court has jurisdiction over this matter. Venue in this matter is also proper. *See* 28 U.S.C. § 1391.

## LEGAL STANDARD

When parties file cross-motions for summary judgment, the Court considers each motion on its own merits. *See Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–33 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

## DISCUSSION

### *Choice of Law*

Interpleader actions based on diversity jurisdiction apply state substantive law and federal procedural law. *See, e.g.*, *Am. Re-Ins. Co. v. Ins. Comm'n of State of Cal.*, 527 F. Supp. 444, 450 (N.D. Cal. 1981). In cases of contract interpretation, Washington courts apply the most significant relationship test from the Restatement (Second) of Conflict of Laws. *Shanghai Commercial Bank Ltd. v. Kung Da Chang*, 404 P.3d 62, 67–68 (Wash. 2017). This test states that the rights and duties of parties to a contract are determined by the local law of the state with the most significant relationship to the parties and contract at issue. *Id.*; *see also* Restatement (Second) of Conflict of Laws § 188. Factors to consider when determining the state with the most significant relationship include the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties involved. *Shanghai Commercial Bank*, 404 P.3d at 67–68; Restatement (Second) of Conflict of Laws § 188.

The Court is tasked with interpreting the Farmers life insurance policy. The policy was created in Washington. ECF No. 1 at 2 (stating Farmers is a resident of Washington). It will be performed in Washington, as that is where the $100,000 is

located. *Id.* Farmers is a resident of Washington and Wallace was a resident of California when he applied for the policy but passed away as a citizen of Washington. *Id.*; ECF No. 48 at 7; ECF No. 47 at 10. These factors show that the state with the most significant relationship with the life insurance policy is Washington. Therefore, the Court will interpret the terms of the life insurance policy using Washington law.

### Sufficiently Identifying the Life Insurance Policy in the Judgment of Dissolution

Ms. Zielke Burton argues that the dissolution of marriage does not specifically identify the life insurance policy, and therefore the decree in the judgment ordering Wallace to name the Burton Children as beneficiaries is unenforceable. ECF No. 62 at 9.

When a life insurance policy is specifically identified in a marriage dissolution judgment, the insurance is encumbered by the dissolution. *Sullivan v. Aetna Life & Cas.*, 764 P.2d 1390, 1392 (Wash. Ct. App. 1988); *see also Aetna Life Ins. Co. v. Bunt*, 754 P.2d 993 (Wash. 1988). However, a dissolution judgment that fails to identify the life insurance policy in question cannot encumber that life insurance policy. *Sullivan*, 764 P.2d at 1392. For example, in *Sullivan*, the Washington Court of Appeals held that the phrase "each party shall maintain a minimum of $10,000 life insurance with their minor child as beneficiary until said child attains majority" did not encumber a specific life insurance policy

because the policy was not adequately identified by the dissolution judgment. *Id.* While the husband may have violated the terms of the dissolution judgment by failing to maintain $10,000 in life insurance for his child, the dissolution judgment did not prevent him from changing the beneficiary on a specific life insurance policy because the dissolution judgment did not identify the policy at issue. *Id.*

On the other hand, in *Bunt*, the Supreme Court of Washington held that a dissolution judgment did encumber a life insurance policy because the dissolution specifically identified the insurance policy in question. *Bunt*, 754 P.2d at 370. Similarly, in *Sager*, a dissolution judgment that required the husband to "make the minor children of the parties . . . beneficiaries of the medical and life insurance policies which exist through his place of employment" was specific enough to encumber the life insurance policy the husband received through his employment. *In re Marriage of Sager*, 863 P.2d 106, 107 (Wash. Ct. App. 1993).

The dissolution judgment between Wallace and Teresa Burton states that "Husband will maintain all existing insurance policies insuring his life naming Michael, Joseph, Catherine, Gabriel, Anthony, Jacob, and Marianna (or a trustee on their behalf) as the primary beneficiaries." ECF No. 4 at 12. Ms. Zielke Burton argues that this language does not encumber the Farmers life insurance policy because the judgment fails to specifically identify the insurance policy at issue, by name or otherwise. ECF No. 62 at 10. The Burton children argue that the phrase

"all existing insurance policies" includes the Farmers insurance policy, which was then-existing at the time of the dissolution. ECF No. 71 at 2–3.

The dissolution judgment at issue is phrased more like *Bunt* and *Sager* than *Sullivan*. The dissolution judgment in *Sullivan* failed to encumber the life insurance policy at issue because the judgment provided no specific identifying language whatsoever, only requiring the husband to "maintain a minimum of $10,000 life insurance." *Sullivan*, 764 P.2d at 1390–91. As the Washington Court of Appeals noted, the judgment only required the husband to maintain some form of life insurance; it did not encumber the specific life insurance at issue in the case and did not contemplate whether life insurance existed at the time of the dissolution. *Id.* at 1392. Here, the dissolution judgment states that "Husband will maintain all existing insurance policies insuring his life." ECF No. 4 at 12. By specifically referring to life insurance policies that existed at the time of the dissolution judgment, the judgment encumbered Wallace's life insurance policy because it existed at that time.

Ms. Zielke Burton argues that the dissolution judgment does not encumber the Farmers life insurance policy because the judgment "does not even confirm if such a policy exists or what type of policy it would be." ECF No. 62 at 11. Ms. Zielke Burton misstates the standard for encumberment under Washington law. In *Sager*, the dissolution judgment encumbered the life insurance policy with the phrase "shall make the minor children of the parties . . . beneficiaries of the medical and life

insurance policies which exist through his place of employment." *Sager*, 863 P.2d at 107. This phrase did not confirm that a policy existed through the husband's place of employment, but it still encumbered the policy at issue. *Id.* The same is true in this case. Additionally, the judgment in *Sager* did not state what type of life insurance policy the husband had at the time, yet the judgment still encumbered the life insurance policy. *Id.* The same is once again true in this case.

Therefore, the dissolution judgment between Wallace and Teresa encumbered the Farmers life insurance policy at issue in this case.

### The Validity of the Attempt to Change the Beneficiary to Ms. Zielke Burton

The Burton Children argue that the change of beneficiary form executed by Wallace and Ms. Zielke Burton in 2015 was void when executed, but Ms. Zielke Burton argues that such change was only voidable. ECF No. 71 at 5; ECF No. 62 at 12.

The named beneficiary of a life insurance policy only has an expectancy interest in the life insurance until the insured passes away and the benefits from the life insurance vest. *Aetna Life Ins. Co. v. Wadsworth*, 689 P.2d 46, 49 (Wash. 1984). As long as the insured holds the right to change the beneficiary at his or her discretion, the beneficiary accrues no property interest until the insured passes away. *Id.* An exception to this rule is when life insurance is encumbered by a dissolution judgment as security for the payment of child support. *Standard Ins.*

*Co. v. Schwable*, 755 P.2d 802, 804 (Wash. 1988). If a dissolution judgment encumbers a life insurance for the benefit of minor children as security for child support, then the insured loses the right to change the beneficiaries on the life insurance as long as the children are receiving child support. *Bunt*, 754 P.2d at 999–1000. Any attempt to change the beneficiaries of the life insurance in violation of the encumbering dissolution judgment is void. *Id.*

There is no dispute that the marriage dissolution judgment for Wallace and Teresa ordered Wallace to "maintain all existing insurance policies" and name the Burton Children as beneficiaries. ECF No. 4 at 12. The question is whether the purpose of the requirement to name the Burton Children as beneficiaries was to secure the payment of child support. If it was intended to secure child support, then Wallace's attempt to change the beneficiary to Ms. Zielke Burton was void when executed because Marianna was still receiving child support. *See Schwable*, 755 P.2d at 804. If it was not intended to secure child support, then the change of beneficiary form was valid, but voidable only on occurrence of Wallace's death.

To decide this issue, the Court interprets the terms of the judgment of dissolution from Clackamas County Court in Oregon. ECF No. 4. "Washington courts apply rules of construction applicable to statutes and contracts to determine the intent of the dissolution court." *Stokes v. Polley*, 37 P.3d 1211, 1213 (Wash. 2001). The Court should interpret the judgment of dissolution as a whole and give

effect to every word within. *In re Marriage of Smith*, 241 P.3d 449, 453 (Wash. Ct. App. 2010).

In this case, however, the interpretation is not necessary. At oral argument, counsel for Ms. Zielke Burton conceded that the requirement to name the Burton Children as beneficiaries of the life insurance was security for child support. Accordingly, the Court finds that the requirement to name the Burton Children as beneficiaries of the life insurance was security for child support.

When a dissolution judgment encumbers a life insurance policy and requires minor children to be named as beneficiaries of the life insurance policy as security for child support, any attempt to change beneficiaries while the children are still on child support is void at the time of execution. *Schwalbe*, 755 P.2d at 804. Wallace executed the change of beneficiary form for the Farmers life insurance to Ms. Zielke Burton in February of 2015, when Marianna was still 17 years old and receiving child support. ECF No. 63-1 at 12 (change of beneficiary form); ECF No. 47 at 2 (Marianna's age). Therefore, Wallace's change of beneficiary to Ms. Zielke Burton was void when executed, and Ms. Zielke Burton is not the beneficiary of the life insurance policy.

### Wallace's Obligation to Pay Child Support at the Time of his Death

The parties dispute whether Marianna qualified as a "child attending school" under Oregon law when Wallace passed away. ECF No. 59 at 7; ECF No. at 16.

ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT ~ 13

This dispute determines whether Wallace was required to pay Marianna child support at the time of his death. If Wallace was required to pay child support at the time of his death, then the Burton Children should be the beneficiaries of the life insurance policy, because the dissolution judgment required Wallace to name them as the beneficiaries "as long as [Wallace] is required to pay child support," and orders that a "constructive trust will be imposed over the proceeds of any insurance owned by [Wallace] at the time of [Wallace]'s death if [Wallace] fails to maintain insurance." ECF No. 4 at 12. If Wallace was not required to pay child support at the time of his death, his obligation to name the Burton Children as the beneficiaries of the life insurance had already ended. *Id.*

Under Oregon law,[2] a child can continue receiving child support after turning 18 if the child qualifies as a child attending school. Or. Rev. Stat. § 107.108. A child attending school is a child who is unmarried; is younger than 21 but at least 18 years old; is making satisfactory academic progress as defined by the school that the child attends; and maintains a course load that is no less than one-half of the load that the school considers full-time enrollment. Or. Rev. Stat. § 107.108(1)(a). To continue receiving child support as a child attending school, the

---

[2] Here, Oregon law is used because the dissolution judgment incorporates Oregon child support law into its text. ECF No. 4. Therefore, Wallace's purported obligation to pay child support to Marianna is governed by Oregon law.

ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT ~ 14

child must provide written notice before turning 18 of his or her intent to attend school and obtain consent from the school he or she attends, to disclose to the parent paying child support the child's enrollment status, grades, and a list of courses the child is taking. Or. Rev. Stat. § 107.108(6)(a).

There is no dispute that neither before nor after turning 18 years old Marianna completed the required paperwork to qualify as a "child attending school" under Oregon law. Crissy Holloway, an administrative specialist for the Oregon Department of Justice, Division of Child Support, attested in a sworn declaration that the records for Marianna Burton indicate that she did not begin the process of completing the paperwork to become a "child attending school" until September of 2017, two months after Wallace passed away and when Marianna was 19 years old. ECF No. 63-3 at 10. Ms. Holloway's declaration was undisputed by the Burton Children. Because Marianna did not complete the paperwork required to qualify as a "child attending school," she cannot be considered a "child attending school" under Oregon law. *See* Or. Rev. Stat. § 107.108(6)(a). Therefore, the Court concludes that at the time of Wallace's death, Marianna was not eligible to receive child support from Wallace.

In response, the Burton Children argue that Wallace was required to give notice to Marianna of his intent to stop paying child support. ECF No. 71 at 7. They argue that Marianna was still entitled to child support at the time Wallace

passed away because he never gave her notice of his intent to stop the payments, automatically qualifying her as a child attending school. *Id.* In support of their arguments, they cite section 107.108(8)(b), which requires written notice by the parent before child support may be ended. Or. Rev. Stat. § 107.108(8)(b).

The Burton Children conveniently ignore section 107.108(8)(a), which states that an obligation to pay child support ends when "[t]he child has reached 18 years of age and has not provided written notice of the child's intent to attend or continue to attend school, or the child has graduated or reached the date to stop attending classes." Or. Rev. Stat. § 107.108(8)(a). Here, Marianna turned 18 in October of 2015. ECF No. 47 at 2. She continued receiving child support until her graduation from high school. ECF No. 47 at 8. At that point, Wallace's child support obligations ceased as a matter of law under section 107.108(8)(a). Therefore, the Burton Children's argument that Wallace was required to give notice to end his child support obligations is not persuasive.

Marianna was not a "child attending school" at the time of Wallace's death because she failed to fill out the required paperwork. Therefore, Wallace's obligation to name the Burton Children as beneficiaries of his life insurance imposed by the dissolution judgment had ended by the time of his death.

/ / /

/ / /

ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT ~ 16

***Remedy in Equity***

The Court's findings create a situation in which no party to this case is entitled to the proceeds of the life insurance policy as a matter of law. First, Ms. Zielke Burton is not entitled to the money because Wallace's attempt to name her as sole beneficiary of the life insurance was void when executed. However, the Burton Children are not entitled to the money because none of them was entitled to receive child support from Wallace at the time of his death, so Wallace's obligation to name them as beneficiaries of the life insurance had ended. Because legal principles do not provide an answer, the Court turns to equitable principles.

Interpleader actions and remedies are developed in equity and governed by equitable principles. *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1012 (9th Cir. 2012). In Washington, the trial court has broad discretionary power to fashion equitable relief for the parties that addresses the facts and circumstances of each particular case. *SAC Downtown Ltd. P'ship v. Kahn*, 867 P.2d 605, 609 (Wash. 1994).

The parties present several arguments in equity. Ms. Zielke Burton argues that Marianna already received over $76,000 in benefits from Wallace's Accidental Death and Dismemberment Policy, and therefore has no need for the $100,000 in life insurance. ECF No. 62 at 19. The Burton Children argue that Ms. Zielke

Burton cannot collect the benefits in equity because she acted with unclean hands. ECF No. 71 at 9.

A party that acts with unclean hands cannot recover in equity. *J. L. Cooper & Co. v. Anchor Sec. Co.*, 113 P.2d 845, 857 (Wash. 1941); *Miller v. Paul M. Wolff Co.*, 316 P.3d 1113, 1117 (Wash. Ct. App. 2014). To act with unclean hands is to act unjustly or in bad faith regarding the underlying dispute between the parties. *Sun Life Assurance Co. of Can. v. Lee*, No. 48971-6-II, 2017 WL 3485058, at *8 (Wash. Ct. App. Aug. 15, 2017).

The Burton Children argue that Ms. Zielke Burton acted in bad faith by acting in concert with Wallace to name her as the beneficiary of his life insurance policy while Marianna was still receiving child support. ECF No. 71 at 9. They also claim she acted in bad faith in trying to subvert this interpleader action by litigating the dispute at the state probate court. *Id.* Other than providing argument, the Burton Children have submitted no evidence to support that Ms. Zielke Burton acted in bad faith.

Because the Burton Children claim that Ms. Zielke Burton worked in concert with Wallace, the Court examines Wallace's actions. There is no evidence that Wallace ever provided a copy of the dissolution judgment to Farmers, as Wallace was required to do under the terms of dissolution judgment. ECF No. 4 at 12–13. There is no evidence that Wallace changed the beneficiaries of the life insurance

policy to the Burton Children or provided proof of such change of beneficiaries to Teresa, also ordered by the dissolution judgment. *Id.* However, it appears that even though Wallace is presumed to have known the content of the dissolution judgment, and even though he apparently was still paying Marianna child support at the time that he changed the beneficiary of the life insurance policy in February of 2015, he attempted to change the beneficiary of the life insurance policy to Ms. Zielke Burton, in clear violation of the dissolution judgment. ECF No. 48 at 83–84 (showing that Marianna was receiving child support until May of 2016); ECF No. 63-1 at 12 (Wallace's attempt to change the beneficiary of his life insurance to Ms. Zielke Burton in February of 2015). These actions support that Wallace may have acted unjustly and in bad faith.

But there is no evidence that Ms. Zielke Burton acted with unclean hands. The Burton Children argue that Ms. Zielke Burton was aware of Wallace's child support obligations but worked to subvert them by naming herself beneficiary of the life insurance. ECF No. 71 at 9. While Ms. Zielke Burton apparently did know about Wallace's child support obligations, there is no evidence that Ms. Zielke Burton knew that Wallace was required to name the Burton Children as beneficiaries of the life insurance policy until they were no longer entitled to child support. ECF No. 63-1 at 4–5. The Court will not infer evidence that does not exist in the record. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Additionally, the Court

ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT ~ 19

will not impute Wallace's unclean hands to Ms. Zielke Burton. *See Sun Life Assurance Co.*, 2017 WL 3485058, at *8 ("By its nature, the 'wrong' of inequitable conduct is that of the actor."). Therefore, the Court finds that Ms. Zielke Burton did not act with unclean hands.

Finding that Ms. Zielke Burton is not barred from recovering in equity, the Court considers the facts and circumstances of this case to fashion an appropriate equitable relief. *SAC Downtown*, 867 P.2d at 609. As counsel for Ms. Zielke Burton conceded, the life insurance was encumbered by the dissolution judgment as security for child support. By the time Wallace had passed away, none of the Burton Children was receiving child support, meaning Wallace's obligation to name them as beneficiaries of the life insurance had ended. While Wallace attempted to change the beneficiary of his life insurance to Ms. Zielke Burton in February of 2015, before his child support obligations ended, he showed some intent to care for Marianna on event of his death by naming her the beneficiary of his Accidental Death and Dismemberment Policy, which Marianna did in fact receive. ECF No. 63-2 at 89. Assuming that the Accidental Death and Dismemberment Policy served as substitute res for the life insurance policy that was encumbered by the dissolution decree, Wallace could be deemed as having satisfied his child support obligations to the Burton Children when their claim to the life insurance was founded on a need for child support, and all of them had reached the age of majority. *Id.* at 96.

ORDER GRANTING DEFENDANT BRIDGETTE ZIELKE BURTON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS BURTON CHILDREN'S MOTION FOR SUMMARY JUDGMENT ~ 20

Therefore, the Court finds that equitable principles weigh in favor of Ms. Zielke Burton.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendants Burton Children's Motion for Summary Judgment, **ECF No. 44**, and First Amended Motion for Summary Judgment, **ECF No. 59**, are **DENIED**.

2.     Defendant Bridgette Zielke Burton's Cross-Motion for Summary Judgment, **ECF No. 62**, is **GRANTED**.

3.     Judgment shall be entered for Defendant Bridgette Zielke Burton, in the amount of **$100,000**, plus interest, calculated as set forth in Wash. Rev. Code § 48.23.300.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** January 18, 2019.


_____ *s/ Rosanna Malouf Peterson* _____
ROSANNA MALOUF PETERSON
United States District Judge